**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| 880 S. ROHLWING ROAD, LLC, | ) | |
| | ) | |
| Appellant, | ) | No. 16-cv-07650 |
| | ) | |
| v. | ) | Bankruptcy Case No. 16-14993 |
| | ) | |
| | ) | |
| T&C GYMNASTICS, LLC, | ) | |
| | ) | |
| Appellee. | ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

AMY J. ST. EVE, District Court Judge:

Movant-Appellant 880 S. Rohlwing Road, LLC has appealed from the order of the

bankruptcy court denying its motion to dismiss the Chapter 11 filing of Debtor-Appellee T&C

Gymnastics, LLC as a bad-faith filing. Appellant has also moved the Court to withdraw the

reference of the underlying bankruptcy proceeding. (R.1, R.9). For the reasons set forth below,

the Court declines to exercise jurisdiction over Movant's interlocutory appeal and denies without

prejudice its motion to withdraw the reference.

## PROCEDURAL BACKGROUND

On May 2, 2016, Debtor T&C Gymnastics, LLC filed a voluntary Chapter 11 Bankruptcy

Petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern

Division, Case No. 16-14993. (R.1-4, Bankruptcy Dkt. at R.1). On May 10, 2016, Movant 880

S. Rohlwing Road, LLC moved to dismiss the case as a bad-faith filing. (*Id.* at R.13). The

Bankruptcy Court reviewed the briefing and heard oral argument on June 22, 2016, after which it

denied the motion following a discussion of "bad faith" factors pertinent to an 11 U.S.C. §

1112(b) dismissal analysis. (*Id.* at R.45; R.10; R.12-1, A000011-43 (the "Hearing Transcript")).

The Bankruptcy Court denied the motion without prejudice, noting, "[i]t may be . . . that this

case was filed in bad faith, but I don't have the showing that I need to rule on that today." (*Id.* at

A000031-33 ("I agree with the movant that there are certainly questions regarding the validity

and treatment of the pre-petition appraisal . . . But right now there's not enough for me . . . to

simply make what are very deep findings with respect to the nature of these transfers"). The

Bankruptcy Court issued a written order on July 13, 2016, certifying that there was "no just

cause for delay of enforcement or appeal of this ruling." (R.1-4, Bankruptcy Dkt. at R.53; R.1-

3). On July 28, 2016, 880 S. Rohlwing Road, LLC filed the present appeal. (R.1). On

September 7, 2016, following reassignment pursuant to Local Rule 40.4, 880 S. Rohlwing Road,

LLC filed the present motion to withdraw the reference. (R.9).

## FACTUAL BACKGROUND

### I.    Pre-Petition History of Debtor and Its Principals

#### A.    Aerial Gym Stars, Inc.

Debtor's principal members are Tony and Carol Whitaker, residents of Addison, Illinois.

(R.12-1, A000071-72). In February 2005, the Whitakers filed for Chapter 7 protection and

received a discharge from the bankruptcy court. Prior to receiving this discharge, however, the

Whitakers formed an Illinois corporation called Aerial Gym Stars Enterprises, Inc. (*Id.* at

A000310-40). In September 2005, their previous corporation—Aerial Gym Stars, Inc.—filed for

bankruptcy, listing no significant real or personal property in its petition. (*Id.* at A000341-64).

In Movant's view, "[i]t is entirely possible that the business assets of Aerial Gym Stars were

already being used by the new business under the name of Aerial Gym Stars Enterprises, Inc."

(R.12, Appellant Br. at 7).

## B. Aerial Gym Stars Enterprises, Inc.

In November 2010, Aerial Gym Stars Enterprises, Inc. (hereinafter, "Aerial") entered into a commercial lease agreement with Movant, 880 S. Rohlwing Road, LLC. (R.11-1). Aerial operated a gymnastics school on that property and generated gross revenues of over $1 million in 2013. (R.11-2). In September 2013, however, Aerial began defaulting on its lease payments— exceeding $20,000 per month—and Movant commenced eviction proceedings. (*Id.*; R.11-5, Answer to Compl. ¶¶ 7-8; *see also* R.7-6 at 461-62). On September 29, 2014, Aerial filed a voluntary Chapter 11 Bankruptcy Petition in the United States Bankruptcy Court for the Northern District of Illinois, Eastern Division, Case No. 14-35241. On December 10, 2014, the bankruptcy court granted Movant's request to lift the automatic stay, and to allow the eviction action to proceed, in light of Aerial's failure to meet post-petition lease obligations as required under 11 U.S.C. § 365. (R.12-1, A000367-69). The bankruptcy court thereafter dismissed the case on motion by the U.S. Trustee. (Case No. 14-35241, R.40). On February 11, 2015, Movant filed a Verified Complaint for Forcible Entry and Other Relief in the Circuit Court of DuPage County. (R.12-1, A000103-08). The Circuit Court entered judgment in Movant's favor in the amount of 259,590.41 on April 1, 2015 (the "Judgment"). (*Id.* at A000109).

## C. T&C Gymnastics, LLC

### 1. Debtor's Formation

On March 13, 2015—two weeks before the Judgment—the Whitakers formed Debtor, T&C Gymnastics, LLC. (R.11-3, Whitaker Aff. ¶ 2). Coincident with its formation, Debtor purchased the assets of Aerial in exchange for a promissory note in the amount of $29,481.85. (R.11-4, Promissory Note, Dated Effective March 13, 2015; *see also* R.12-1, A000278-93, Asset Purchase and Sale Agreement). These assets included cash, miscellaneous gymnastics

equipment, service contracts, and five automobiles. (R.1-4, Bankruptcy Dkt. at R.1; R.12-1, A000056-59).[1] Movant—citing an initial valuation of Aerial's business by Debtor's appraiser—argues that Aerial transferred "valuable assets worth at least $280,000." (R.15, Appellant Reply Br. at 15 (citing R.12-1, A000471 (Apr. 17, 2015 E-mail from Appraiser Michael Strelka to Attorney Michael Polachek ("The value arrived at is $280,000")). Debtor, however, argues that "the assets of Aerial had no value[.]" (R.14, Appellee Br. at 6; *see also* R.11, Response Br. at 2 ("After obtaining an appraisal showing that the assets of Aerial were worthless, Debtor purchased the assets of Aerial in exchange for a promissory note in the amount of $29,481.85")). Indeed, e-mail correspondence reflects that—after Debtor's counsel questioned the appraiser's underlying rent assumptions and associated computations, including a future rent projection, and after additional review throughout April and May 2015—Debtor's counsel asked the appraiser to "[p]lease go ahead and issue your findings that Aerial has a zero value." (R.12-1, A000468-71; *see also* R.7-7 at 534 ("I estimate that the value of [Aerial] would be –0– under either the income method of valuation, or under the net asset method of valuation")). Aerial "shut down" in March 2015. (R.12-1, A000392 (Whitaker Dep. Tr. at 22)).

Apart from the Promissory Note, Debtor gave no other consideration in exchange for the transfer of Aerial's assets. (*Id.* at A000402 (Whitaker Dep. Tr. at 32 ("[Q]. Was there anything other than the promissory note which to this date . . . has not been paid? [A]. None that I know of")). The Promissory Note, moreover, is not payable until the balance remaining on a preexisting promissory note held by Tony Whitaker's father (the "Whitaker Note") is less than $25,000. (11-4, Promissory Note). According to Debtor, Tony Whitaker's father "had loaned various amounts of money to Aerial for the original purchase of its gymnastics equipment and…

---

[1] Debtor does not dispute Movant's contention that it received such property from Aerial. (R.12, Appellant Br. at 8-9; *see also* R.11-5, Answer to Compl. ¶ 50).

held an existing UCC lien on substantially all of the assets of Aerial." (R.11, Response Br. at 2). Under the terms of the Asset Purchase and Sale Agreement, Debtor assumed Aerial's liability on the Whitaker Note. (R.12-1, A000279 at § 1.5 ("No liabilities of Seller shall be assumed by Purchaser except (i) the obligation to pay to William and Janice Whitaker pursuant to the terms of a Demand Promissory Note and Security Agreement dated April 17, 2014 secured by the gymnastics equipment of Seller perfected with UCC lien number 019395081 . . . .")).

According to Movant, between Debtor's formation and its bankruptcy filing, Tony Whitaker provided "damaging testimony in a citation examination" arising from the Judgment, which, in turn, "led to the filing of an alter ego complaint" against Debtor. (R.12, Appellant Br. at 19 (citing A000167-74 (testimony concerning the personal use of Aerial funds)). In particular, Movant filed a lawsuit in the Circuit Court of DuPage County against Aerial, Debtor, and the Whitakers, alleging that Debtor was a successor to Aerial and that the Whitakers were mere alter egos of Aerial (the "Successor Liability Litigation"). (R.11-5, Answer to Compl; *see also* R.7-9 at 641-54 (same)). According to Tony Whitaker, Movant conducted discovery throughout 2015-2016 and rejected several offers to resolve the Successor Liability Litigation. Because "Debtor could not continue to pay substantial legal costs in defending the case" while also paying its creditors and employees, Debtor filed the present bankruptcy case. (R.11-3, Whitaker Aff. ¶¶ 4-8; R.7-7 at 520-21 (same); R.12-1, A000395 (Whitaker Dep. Tr. at 25 ("We also have a business loan [from] Direct Capital that we were trying to pay and we could not")).

### 2.    Debtor's Business

T&C Gymnastics "operates a gymnastics school in Itasca, Illinois and services day cares and park districts throughout the Chicagoland area." (R.11-3, Whitaker Aff. ¶ 2; *see also* R.7-6 at 462-63). It has over 20 employees, plus the Whitakers. (*Id.*). Debtor has operated at a profit

since its formation, earning net income of $40,987 for the year 2015 and net income of

$33,012.54 for the first five months of 2016.  (*Id.* ¶ 3; R.7-6 at 453-56).  As of June 2016, Tony

Whitaker expected Debtor to generate $800,000 in gross revenue for 2016.  (R.12-1, A000387

(Whitaker Dep. Tr. at 17)).  In Debtor's view, part of its profitability stems from the

"reasonableness" of its commercial lease with its Itasca landlord, West Suburban Industrial

SDCO, Inc., pursuant to which it pays less than $14,000 per month in rent.  (R.14, Appellee Br.

at 7; R.7-2 at 85-125)).

## II.     Debtor's Bankruptcy

On May 2, 2016, Debtor filed for Chapter 11 protection.  On June 10, 2016, Debtor filed

its Plan of Reorganization ("Plan") and Disclosure Statement.  (R.11-7, R.11-8; *see also* R.7-7 at

539-69).  The Plan lists seven classes of creditors, including:  (1) William Whitaker; (2) Direct

Capital Corporation; (3) Mercedes Benz Financial Services; (4) Internal Revenue Service;[2] (5)

"Unsecured Claim" of Aerial; (6) "Unsecured Claims of Attorneys;" and (7) "Contingent,

Unliquidated and Disputed Claim" of Movant.  With respect to payments, the Plan proposes to

pay Movant "monthly payments of $432.65 for a period of 60 months for a total distribution of

10% of its alleged claim," while paying Debtor's secured creditors in full and paying its general

unsecured creditors "100% of their allowed claims."  (R.11-7, Plan at 3-5 ("Rohlwing does not

have a judgment against the Debtor and the Debtor disputes the claim")).[3]  Secured creditor

Direct Capital Corporation—which holds a security interest in Debtor's assets pursuant to a UCC

lien—has agreed to vote in favor of the Plan.  (R.11-9; *see also* R.7-8 at 597 (same)).  On

September 7, 2016, the bankruptcy court compelled Debtor to assume its lease with West

---

[2]  According to the filing, Debtor owes no amount to the Internal Revenue Service.  (R.11-7).

[3]  Movant disputes the characterization of its claim as "unsecured," contending that it "is a secured creditor with liens on all of Debtor's assets pursuant to the service of the citation of assets served on Debtor prior to its bankruptcy case."  (R.12, Appellant Br. at 13).

Suburban Industrial SDCO, Inc. (R.11-11, Order Compelling Debtor to Assume Unexpired Lease).

During the June 2, 2016 creditor meeting held pursuant to 11 U.S.C. § 341, Tony Whitaker confirmed that he and four other family members have drawn a salary or wage from Debtor since its formation, in addition to other benefits, such as health insurance, dental insurance, the personal use of one automobile, and a timeshare in Florida. (R.12-1, A000377-80, A000396-400 (Whitaker Dep. Tr. at 7-10, 26-30)). Whitaker was not able to confirm the "exact total" of such compensation. (*Id.* at A000397-98). During the creditors' meeting, counsel for Movant also confronted Whitaker with documents—produced in the Successor Liability Litigation—suggesting an overlap between Aerial, Debtor, and the Whitakers. (*Id.* at A000403-06 (Whitaker Dep. Tr. at 33-37)). Whitaker disclaimed knowledge of such documents and pressed the separateness of Debtor and Aerial. (*Id.* ("[Q]. And that was negotiated between T&C and Aerial; is that correct? [A]. Yes. [Q]. Were they two different companies? [A]. Yes")).

## ANALYSIS

### I.      Jurisdiction over Movant's Appeal

#### A.      General Principles

As a threshold matter, the Court must determine whether it has jurisdiction to hear this appeal. Movant's brief contends that the Court has jurisdiction "under 28 U.S.C. § 158(d)(1)," while its Notice of Appeal references " 28 U.S.C. § 158(a)(1)." (R.1; R.12, Appellant Br. at 4). Neither provision, however, authorizes the present appeal. The former provision vests appellate jurisdiction in the "courts of appeals" over "all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section." *See* 28 U.S.C. § 158(d)(1); *see also Smith v. Capital One Bank (USA), N.A.*, --- F.3d ---, No. 16-1422, 2016 WL 7404760, at *2 (7th Cir.

Dec. 22, 2016) ("This Court has jurisdiction over appeals from final district court decisions. 28 U.S.C. § 158(d)(1). In the bankruptcy context, both the bankruptcy court decision and the district court decision must be final"). The district court, thus, does not have appellate jurisdiction through 28 U.S.C. § 158(d)(1). The latter provision—28 U.S.C. § 158(a)(1)—provides that district courts have jurisdiction over appeals "from final judgments, orders, and decrees" of the bankruptcy judge. *See* 28 U.S.C. § 158(a)(1). Although the concept of "flexible finality" exists within bankruptcy jurisprudence, *see In re McKinney*, 610 F.3d 399, 402 (7th Cir. 2010), "denials of motions to dismiss are generally not final orders, even in the bankruptcy context." *See In re Jartran, Inc.*, 886 F.2d 859, 863-64 (7th Cir. 1989); *see also In re Vlasek*, 325 F.3d 955, 961 (7th Cir. 2003) ("we will not treat as 'final' the bankruptcy court's April 30, 1999 decision to deny Vlasek's motion to dismiss his bankruptcy petition and, thus, hold that an appeal of that decision as of right under 28 U.S.C. § 158(a) was not available"). In this case, when asked whether his order was a "final order," or "if it's not final, if [the parties] can have it note the '[no] reason to delay enforcement language,'" the bankruptcy judge responded, "[w]ell, your appellate rights with respect to an order denying a request to dismiss are whatever they are[.]" (R.10, Transcript at 31). Here, Movant's appellate rights are not absolute. *See In re Salem*, 465 F.3d 767, 774 (7th Cir. 2006) ("a party does not have an absolute right to take an interlocutory appeal from the bankruptcy court . . . Instead, the party must seek the leave of the district court"); *In re Jartran*, 886 F.2d at 866 ("certification by the bankruptcy court is not required").

The Court, accordingly, must determine whether to grant leave to appeal the bankruptcy court's order as an interlocutory appeal. *See* 28 U.S.C. § 158(a)(3). Movant's failure to file a motion for leave is not fatal to its appeal, as the district court may "treat the notice of appeal as a

motion for leave and either grant or deny it." Fed. R. Bankr. P. 8004(d). In determining whether to grant an interlocutory appeal under 28 U.S.C. § 158(a)(3), district courts typically look to the "three-part test of 28 U.S.C. § 1292(b), which is the framework that guides the circuit court of appeals in exercising its discretion over interlocutory appeals from district courts." *See Dempsey v. McCarthy*, No. 09 C 7949, 2010 WL 918083, at *2 (N.D. Ill. Mar. 10, 2010). Under this test, "an appeal is allowable when it (1) involves a controlling question of law; (2) over which there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may speed up the litigation." *Id.* (citing 28 U.S.C. § 1292(b)). In other words, "there must be a question of *law*, it must be *controlling*, it must be *contestable*, and its resolution must promise to *speed up* the litigation." *In re Kmart Corp.*, No. 04 C 4978, 2004 WL 2222265, at *1 (N.D. Ill. Oct. 1, 2004) (citing *Ahrenholz v. Bd. of Trustees of Univ. of Illinois*, 219 F.3d 674, 675 (7th Cir. 2000)). The party seeking leave to appeal must demonstrate these factors. *See id.*; *see also In re Auto. Professionals, Inc.*, 379 B.R. 746, 751 (N.D. Ill. 2007).

### B.    Analysis

Interlocutory review is generally reserved for "pure" questions of law – that is, "abstract issue[s] of law . . . suitable for determination by an appellate court without a trial record." *See Ahrenholz*, 219 F.3d at 676-77. According to Movant, this appeal raises two issues: (1) whether the bankruptcy court has jurisdiction to preside over a bankruptcy proceeding "involving a two-party dispute in which the alleged debtor was the recipient of fraudulently transferred assets for a failed Chapter 11 debtor for the purpose of avoiding state court collection proceedings[;]" and (2) whether the bankruptcy court should have dismissed Debtor's Chapter 11 case—in which the Debtor is the alleged successor-in-interest to a failed Chapter 11 debtor—as a bad-faith filing. (R.7, Statement of Issues; R.12, Appellant Br. at 5). The Court discerns two legal questions

here:  (1) whether the Supreme Court's decision in *Stern v. Marshall*, 564 U.S. 462 (2011) precludes the assertion of successor liability and alter ego claims within the context of Debtor's Chapter 11 case; and (2) whether the bankruptcy judge applied an "incorrect test for determining whether the bankruptcy case was subject to dismissal."  (R.12, Appellant Br. at 2-4).  Neither, however, constitutes a controlling, contested issue of law, the resolution of which will expedite the proceedings.  *See Ahrenholz*, 219 F.3d at 675.

### 1. *Stern v. Marshall*

The Court examines the first question—the import of *Stern v. Marshall*—below, in connection with the motion to withdraw the reference.  This aspect of Movant's appeal, however, does not "involve a *contestable* question of law, *i.e.* a question of law where there is substantial ground for difference of opinion."  *See In re Livemercial Aviation Holding, LLC*, No. 10-20051, 2014 WL 3611348, at *2 (N.D. Ind. July 21, 2014); *see also In re Kmart*, 2004 WL 2222265 at *2.  To the contrary, Supreme Court precedent is clear:  *Stern* does not completely divest bankruptcy courts of authority to hear so-called "*Stern* claims."  *See Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014) ("If the claim satisfies the criteria of § 157(c)(1), the bankruptcy court simply treats the claims as non-core:  The bankruptcy court should hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment"); *Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1940 (2015) ("[Congress] gave bankruptcy courts more limited authority in non-core proceedings . . . Absent consent, bankruptcy courts in non-core proceedings may only submit proposed findings of fact and conclusions of law, which the district courts review *de novo*") (citing 28 U.S.C. § 157(c)(1) and discussing *Stern*)).  In other words, while *Stern* precludes the final adjudication of "*Stern* claims" by bankruptcy courts absent consent, it does not broadly

strip bankruptcy courts of jurisdiction where such claims are asserted.  In light of authorities such as *Executive Benefits* and *Wellness*, Movant has failed to demonstrate the contestability of this legal issue.

### 2.    *In re Madison Hotel Associates*

With respect to the second question, Movant argues that the bankruptcy court "ignored the affirmative good faith requirement set forth in the Seventh Circuit's ruling in *In re Madison Hotel Associates*, 749 F.2d 410, 426 (7th Cir. 1984) and instead relied on an overly difficult and confusing set of factors from a bankruptcy case called *In re Tekena US, LLC*, 419 B.R. 341, 346 (Bankr. N.D. Ill. 2009)."  (R.12, Appellant Br. at 10).  During his oral ruling, the bankruptcy court noted:  "the Seventh Circuit has recognized that bad faith is cause for dismissal under [11 U.S.C. § 1112] in the matter of the Madison Associates Hotels case.  The Tekena factors, in fact, are I think a guideline for determining whether or not bad faith exists."  (R.10, Transcript at 13-14).  He then noted:

> I've been through the factors, and frankly some of the factors weigh in favor of the debtor and some don't.  As I said, this is not exactly a clear case.  The factors that I think frankly weigh in favor of the debtor -- and let's be clear what I mean by weigh in favor of the debtor.  When I say weigh in favor of the debtor, it does not mean that if this factor exists, the debtor has filed a case in good faith; it means that the factor as it provides does not, as it exists -- does not allow the Court to make a finding of fact, okay.  So if it's neutral, frankly, it weighs in favor of the debtor is what I meant to say, because that means it will not help me in reaching a conclusion that the case was filed in bad faith.

(*Id.* at 16).  Under Movant's interpretation of these words, the bankruptcy court's "inability . . . to find affirmative bad faith" runs counter to the Seventh Circuit's observation that "'good faith' is a threshold prerequisite to securing Chapter 11 relief."  *See Madison Hotel*, 749 F.2d at 426.

After reviewing the entire hearing transcript and applicable case law, however, the Court disagrees that the bankruptcy court applied "the incorrect standard for bad faith filings."  (R.12,

Appellant Br. at 3). Contrary to Movant's suggestion, the Seventh Circuit in *Madison Hotel* did

not interpret "good faith" under Section 1112 or set forth a defined legal standard. *See* 749 F.2d

at 426 ("the lack of such good faith constitutes 'cause,' sufficient for dismissal under 11 U.S.C. §

1112(b)").[4] Many courts in this District, accordingly, "have enumerated several non-exclusive

factors that are relevant to determining whether a debtor has failed to file a bankruptcy petition in

good faith." *See, e.g.*, *In re S. Beach Sec., Inc.*, 341 B.R. 853, 856 (N.D. Ill. 2006) (citing

*Madison Hotel*). Many of these factors, in turn, overlap with those set forth in the *Tekena* case

on which the bankruptcy judge relied. *See In re Tekena*, 419 B.R. at 346. In addition, they

overlap with some of the factors commonly discussed in the context of the "new debtor

syndrome." *See, e.g.*, *Matter of Little Creek Dev. Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986)

("The 'new debtor syndrome,' in which a one-asset entity has been created or revitalized on the

eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does

not uniquely categorize, bad faith cases"); *In re Duvar Apt., Inc.*, 205 B.R. 196, 200 (B.A.P. 9th

Cir. 1996) (outlining "[i]ndicia of the new debtor syndrome").[5] As the bankruptcy judge made

clear, such factors are "guidelines," not rigid standards. (R.10, Transcript at 13). *See also e.g.*,

---

[4] Movant appears to recognize this reality, acknowledging that—in seeking dismissal—it "asserted several other factors that are not cited by *Tekena*" that courts treat as relevant to the "bad faith" inquiry. (R.12, Appellant Br. at 25-26).

[5] By way of example, "[i]ndicia of the new debtor syndrome include: (1) transfer of distressed property into a newly created corporation; (2) transfer occurring within a close proximity to the bankruptcy filing; (3) transfer for no consideration; (4) the debtor has no assets other than the recently transferred property; (5) the debtor has no or minimal unsecured debt; (6) the debtor has no employees and no ongoing business; and (7) the debtor has no means, other than the transferred property, to service the debt on the property." *In re Duvar*, 205 B.R. at 200. The *Tekena* factors, meanwhile, include: "1. The debtor has few or no unsecured creditors; 2. There has been a previous bankruptcy petition by the debtor or a related entity; 3. The pre-petition conduct of the debtor has been improper; 4. The petition effectively allows the debtor to evade court orders; 5. There are few debts to non-moving creditors; 6. The petition was filed on the eve of foreclosure; 7. The foreclosed property is the sole or major asset of the debtor; 8. The debtor has no ongoing business or employees; 9. There is no possibility of reorganization; 10. The debtor's income is not sufficient to operate; 11. There was no pressure from non-moving creditors; 12. Reorganization essentially involves the resolution of a two-party dispute; 13. A corporate debtor was formed and received title to its major assets immediately before the petition; and 14. The debtor filed solely to create the automatic stay." *See In re Tekena*, 419 B.R. at 346.

*In re Lake Michigan Beach Pottawattamie Resort LLC*, 547 B.R. 899, 905 (Bankr. N.D. Ill. 2016) (Barnes, J.) ("The so-called '*Tekena* factors' are . . . neither exhaustive nor mandatory. The court will, nonetheless, consider them in the totality of this case"); *In re Bartle*, 560 F.3d 724, 730 (7th Cir. 2009) ("The decision to dismiss a Chapter 11 proceeding pursuant to section 1112(b) is one committed to the court's discretion"). Even assuming that the "central question" is "whether a reorganization plan is possible[,]" *see In re Bovino*, 496 B.R. 492, 500 (Bankr. N.D. Ill. 2013), the bankruptcy court found evidence on this point, favoring Debtor. *See also, e.g.*, *In re Meier*, No. 14-AP-237, 2014 WL 5426763, at *2 (Bankr. N.D. Ill. Oct. 21, 2014); *cf. Matter of Woodbrook Assocs.*, 19 F.3d 312, 316 (7th Cir. 1994) (affirming dismissal where debtor "would not be able to effectuate the proposed plan because it improperly classified unsecured claims in separate classes, violated the absolute priority rule, and did not meet the new value exception"). Although Movant takes issue with the bankruptcy judge's fact finding on this "reorganization" point, such argument "attacks the merits of the decision and does not present a question of debatable controlling law." *Progressive Land Developers, Inc. v. Muhammad Mosque No. 2, Inc.*, No. 87 C 6583, 1987 WL 20155, at *2 (N.D. Ill. Nov. 16, 1987).[6]

In brief, the fact that the Seventh Circuit has not expressly adopted the *Tekena* test does not render such test the "incorrect standard." Given the precedent discussed above, Movant has not demonstrated "substantial conflicting decisions regarding the claimed controlling issue of law." *See Kmart*, 2004 WL 2222265 at *2; *see also In re MCK Millennium Ctr. Parking, LLC*, No. 12 B 24676, 2015 WL 2004887, at *4 (N.D. Ill. Apr. 29, 2015). In addition, although decrying the lack of an evidentiary hearing, Movant does not represent that it actually *requested*

---

[6] Indeed, the bankruptcy court acknowledged that the Plan "may be defective" in light of Movant's alter ego theories, and denied the motion without prejudice. (R.10, Transcript at 18, 20 ("frankly, I don't at this point have enough for me to simply rule off the cuff that the debtor is the alter ego of Aerial")). Given this disposition, and given that the Plan must ultimately satisfy a good faith requirement, *see* 11 U.S.C. § 1129(a)(3), "the issue of bad faith has not been permanently laid to rest[.]" *See Progressive*, 1987 WL 20155 at *3.

such a hearing on its motion to dismiss. *See In re Bartle*, 560 F.3d at 729 ("A hearing is of course not required when no one demands it . . . The parties are entitled to an opportunity to be heard, not to a particular type of hearing"). In this case, the bankruptcy court reviewed the parties' submissions, heard oral argument, and ruled, "I don't have the showing that I need to rule on [bad faith] today . . . Because it is a totality of the circumstances [inquiry], frankly, the movant can make the argument it's already made and then augment them with additional argument, and then I look at them and maybe I agree . . . So while I am concerned . . . I just don't have enough at the moment." (R.10, Tr. at 21-23). It is evident, thus, that the bankruptcy court made a good-faith finding on consideration of the available record, without prejudice to Movant's ability to renew its motion and to offer additional argument or evidence.

In view of the above-discussed precedent and the bankruptcy court's disposition, the Court declines to find that the bankruptcy judge applied the "incorrect standard," warranting interlocutory review. *See In re Archdiocese of Milwaukee*, 482 B.R. 792, 799 (E.D. Wis. 2012), *aff'd on other grounds sub nom. Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101 (7th Cir. 2014) ("Accordingly, the bankruptcy court did not apply the wrong legal standard when it denied the Archdiocese's motion for summary judgment … This is not the proper subject for an interlocutory appeal").

### 3.    *In re Tekena*

Movant further argues that the bankruptcy court "incorrectly applied" the *Tekena* factors. (R.12, Appellant Br. at 15-26; R.15, Reply Br. at 8-11). "If a mere disagreement in how the law is applied to the facts of a particular case was all that was needed for an interlocutory appeal," however, "every single denial of a motion to dismiss would present grounds for interlocutory appeal." *In re Livemercial*, 2014 WL 3611348 at *2; *see also In re Barfield*, No. 15-3131, 2015

WL 4254028, at *4 (C.D. Ill. July 14, 2015) ("Essentially, the Successor Trustee argues that the Bankruptcy Court failed to consider relevant facts and misapplied the facts to the law. Therefore, the Successor Trustee has failed to show a controlling question of law that would warrant an interlocutory appeal"). While it may be that "[t]he primary event demonstrating bad faith was the pre-bankruptcy wholesale transfer of assets for no consideration by Debtor's principals to avoid the impact" of the Judgment, (R.15, Appellant Reply Br. at 5), the Court is not the proper forum to make such a factual finding. (R.10, Transcript at 23 (right now there's not enough for me to rule . . . to simply make what are very deep findings with respect to the nature of these transfers")). Movant's fact-based challenge, in short, does not warrant interlocutory review. *See In re Woltman*, No. 06-2088, 2006 WL 2052078, at *3 (C.D. Ill. May 24, 2006) ("This court concludes that Woltman is actually challenging [the underlying] fact finding and wants this court to review the facts and come to a different conclusion . . . This type of review would not involve what the Seventh Circuit has identified as a 'pure' question of law"); *Progressive*, 1987 WL 20155 at *2 (denying leave to appeal where "the question of law which 'controls' the bankruptcy court's decision below is simply whether the debtor filed in bad faith . . . The standard is fact-based and requires a case-by-case determination").

Ultimately, after reviewing the parties' briefing, the Court concludes that neither issue on appeal presents a "pure question of law, something the [reviewing court] could decide quickly and cleanly without having to study the record[.]" *Ahrenholz*, 219 F.3d at 677. Even narrowing the scope of the appeal to the two legal questions discussed above, Movant has failed to demonstrate the contestability of such questions. *See id.* at 676 ("The criteria are conjunctive, not disjunctive"). In addition, "the issue of bad faith has not been permanently laid to rest" in the underlying bankruptcy proceeding. *See Progressive*, 1987 WL 20155 at *3. For these reasons,

the Court denies Movant leave to appeal.  *See In re Kmart*, 2004 WL 2222265 at *1 ("A court

will not grant leave to appeal an interlocutory order absent exceptional circumstances") (citation

and quotation omitted); *Custom Companies v. Official Comm. of Unsecured Creditors*, No. 00 C

1161, 2000 WL 765090, at *2 (N.D. Ill. June 12, 2000) ("Interlocutory appeals should not be

granted where it would merely encourage needless delay and piecemeal litigation").  The fact

that the bankruptcy court "certified" this appeal, and that Debtor does not oppose appellate

review,[7] does not change the Court's jurisdictional analysis.  The Court, in other words, must

determine for itself whether appellate jurisdiction exists under 28 U.S.C. § 158.  *See HSBC Bank

USA, N.A. v. Townsend*, 793 F.3d 771, 778 (7th Cir. 2015); *Tradesman Int'l, Inc. v. Black*, 724

F.3d 1004, 1010 (7th Cir. 2013) ("the parties cannot consent to this court's jurisdiction; we must

satisfy ourselves that appellate jurisdiction is secure"); *United States v. $304,980.00 in U.S.

Currency*, 732 F.3d 812, 817 (7th Cir. 2013) ("the federal courts are under an independent

obligation to examine their own jurisdiction") (citation and quotation omitted).  Here, where

jurisdiction is not available under 28 U.S.C. § 158(a)(1) and jurisdiction is not warranted under

28 U.S.C. § 158(a)(3), the Court does not have jurisdiction over Movant's appeal.

## II.    Motion to Withdraw the Reference

### A.    Applicable Legal Principles

While district courts have original jurisdiction over Title 11 cases and related

proceedings, *see* 28 U.S.C. § 1334(a) and (b), a district court may refer such matters to the

bankruptcy court.  *See* 28 U.S.C. § 157(a) ("Each district court may provide that any or all cases

under title 11 and any or all proceedings arising under title 11 or arising in or related to a case

under title 11 shall be referred to the bankruptcy judges for the district"); *see also Wellness*, 135

---

[7] Debtor, like Movant, contends that the bankruptcy judge entered a "final order" warranting review under 28 U.S.C. § 158(a)(1).  (R.14, Appellee Br. at 4).

S. Ct. at 1939. Internal Operating Procedure 15(a) establishes this referral practice in the

Northern District of Illinois.[8] Such referrals do not completely divest the district court of

original jurisdiction, however, insofar as it may withdraw the reference. *See* 28 U.S.C. § 157(d)

("The district court may withdraw, in whole or in part, any case or proceeding referred under this

section, on its own motion or on timely motion of any party, for cause shown");[9] *see also Matter*

*of Powelson*, 878 F.2d 976, 979 (7th Cir. 1989) (noting the same); *Pro-Pac, Inc. v. WOW*

*Logistics Co.*, 721 F.3d 781, 788 (7th Cir. 2013) ("the district court can withdraw the reference

and resolve the issues itself").

As Section 157(d) does not define "cause shown" with respect to permissive withdrawal,

district courts generally consider several factors, including whether the referred proceeding is

core or non-core. *See, e.g.*, *In re K & R Express Sys., Inc.*, 382 B.R. 443, 446 (N.D. Ill. 2007)

("the most important factor is whether a proceeding is core or non-core, as efficiency, uniformity

and judicial economy concerns are largely subsumed within it"); *Brandt v. Leasing One Corp.*,

No. 14 C 979, 2014 WL 1797651, at *2 (N.D. Ill. May 6, 2014) (same); *In re Emerald Casino,*

*Inc.*, 467 B.R. 128, 135 (N.D. Ill. 2012) (same). "Core proceedings are proceedings under

bankruptcy law; non-core proceedings are proceedings that relate to a bankruptcy but arise under

some other body of law." *In re Tolomeo*, 832 F.3d 815, 817 (7th Cir. 2016), *reh'g denied* (Sept.

13, 2016); *see also In re K&R*, 382 B.R. at 446-47 ("[A] proceeding is core . . . if it invokes a

substantive right provided by Chapter 11 or if it is a proceeding that, by its nature, could arise

---

[8] *See* http://www.ilnd.uscourts.gov/_assets/_documents/_rules/intops03.pdf.

[9] Section 157(d) further provides for mandatory (as opposed to permissive) withdrawal, directing that a district court "shall, on timely motion of a party, so withdraw a proceeding if the court determines that resolution of the proceeding requires consideration of both title 11 and other laws of the United States regulating organizations or activities affecting interstate commerce." *See* 28 U.S.C. § 157(d). Movant has not suggested that mandatory withdrawal is required here.

only in the context of a bankruptcy case . . . Non-core proceedings are those only marginally related to the bankruptcy, which often are state law causes of action") (citations omitted).

There also exists, however, "a narrow category of claims, called '*Stern*' claims . . . that [S]ection 157 authorizes bankruptcy courts to hear, but that the Constitution prevents them from ruling on." *Official Comm. of Unsecured Creditors of Country Stone Holdings, Inc. v. First Midwest Bank & Ronald Bjustrom*, No. 4:15-CV-04063-SLD, 2016 WL 1259378, at *2 (C.D. Ill. Mar. 30, 2016) (discussing *Stern*); *see also Fed. Deposit Ins., Corp. v. Veluchamy*, No. 12-CV-7496, 2014 WL 5420177, at *3 (N.D. Ill. Oct. 21, 2014) ("[I]n *Stern v. Marshall*, the Supreme Court held that certain claims can be 'core' within the meaning of federal law and yet not be ones over which bankruptcy judges have Article III authority to enter final judgments"). Accordingly, some courts "now distinguish among 'typical core proceedings,' *Stern* claims, and non-core claims" in connection with permissive withdrawal motions. *See Veluchamy*, 2014 WL 5420177 at *3. Post-*Stern* courts nevertheless continue to consider other factors—including (i) the promotion of judicial economy, (ii) the conservation of debtor and creditor resources, and (iii) the request for a jury trial—in considering a request for withdrawal. *See id.* at *3-5; *see also STC, Inc. v. Glob. Traffic Techs., LLC*, No. 15-CV-0037-SMY, 2015 WL 1042431, at *4-5 (S.D. Ill. Mar. 6, 2015) ("It is therefore not an efficient use of judicial resources to withdraw the reference at this time"); *First Midwest Bank*, 2016 WL 1259378 at *3 ("This litigation is at the very earliest phases; if it appears that a jury trial will indeed occur, the parties may move again to withdraw the reference on that basis").

As the party seeking relief, Movant has the burden of establishing that cause for withdrawal exists. *See Equip. Acquisition Res., Inc. v. U.S. IRS*, No. 10 C 4565, 2010 WL

3273060, at *2 (N.D. Ill. Aug. 13, 2010). The Court has broad discretion in determining whether to grant or deny such relief. *Id.*

## B. Analysis

"Permissive withdrawal of reference to a bankruptcy court can involve withdrawal of an entire bankruptcy case, an entire bankruptcy proceeding, a portion of a bankruptcy proceeding, an entire adversary proceeding, or a portion of an adversary proceeding." *See Abrams v. DLA Piper (US) LLP*, No. 2:12-CV-19-TLS, 2012 WL 1714591, at *3 (N.D. Ind. May 15, 2012) (citing 1 Norton Bankr.L. & Prac.3d § 8:1)). In this case, Movant urges the Court to withdraw the reference over Debtor's bankruptcy proceeding because—in Movant's view—the proceeding consists of a two-party dispute involving successor liability and alter ego claims over which the bankruptcy court lacks jurisdiction. Debtor disagrees with Movant's characterization, noting Movant's lack of legal support concerning withdrawal over an entire Chapter 11 case. (R.11, Response Br. at 4-7 ("Rohlwing has cited no cases which have allowed withdrawal of an entire bankruptcy proceeding where the Debtor has filed a plan of reorganization and is prepared to move forward with confirmation of the plan")). Under either view, however, the Court finds that withdrawal is not appropriate here.

### 1. Withdrawal of Reference over Debtor's Bankruptcy Case

Construing its request broadly, Movant asks the Court to withdraw the reference over Debtor's entire Chapter 11 case. As courts have recognized, "[a] motion seeking a withdrawal of an entire bankruptcy case, as opposed to merely a proceeding within the case, is an extreme request." *See In re FMG, Inc.*, No. 91 C 6018, 1991 WL 247595, at *1 (N.D. Ill. Nov. 14, 1991); *In re Persaud*, No. 11-CV-6391 DLI, 2012 WL 3544732, at *2 (E.D.N.Y. Aug. 16, 2012) ("By

asking the court to withdraw the reference for entire bankruptcy case, the Trustee invites this court to take the drastic step of overseeing the disposition of Debtor's entire estate").

Here, Movant does not dispute that certain issues related to the confirmation of Debtor's Plan, including the allowance of claims and the determination of lien validity, are "core" proceedings within the meaning of 28 U.S.C. § 157(b)(2).[10]  In addition, Movant does not dispute that the bankruptcy court has already decided numerous motions in the underlying case, including a motion to assume Debtor's lease and a motion to authorize the use of cash collateral. Instead, Movant questions the overall legitimacy of Debtor's bankruptcy filing, including the legitimacy of its seven creditor classes, arguing that the "sole reason" for Debtor's filing was to avoid Movant's collection efforts on the Judgment.  (R.13, Reply Br. at 3-4 ("The Debtor's fraudulent scheme is the lynchpin upon which the Debtor's bad faith Chapter 11 case rests")).

Granting Movant's present request to "withdraw the reference over the Debtor's Chapter 11 proceeding and promptly dismiss the case as a bad-faith filing," however, would require the Court to review and overturn the non-final, factual findings of the bankruptcy court.  Even assuming—without deciding—that the standard for withdrawal under 28 U.S.C. § 157(d) is lower than the standard for leave to appeal under 28 U.S.C. § 158(a)(3), *see In re Beale*, 410 B.R. 613, 616 (N.D. Ill. 2009), the record does not permit the Court to reach a bad-faith finding at this juncture.  In particular, although the timing of Debtor's formation and the circumstances of the Promissory Note are suspicious—particularly in light of the Whitakers' successive bankruptcy filings—the Court cannot yet determine that the March 13, 2015 transfer was, in fact, fraudulent.  Apart from the e-mail exchange between Debtor's appraiser and its counsel, Movant offers no documentary evidence or testimony on this point.  Movant likewise does not challenge the contents of the appraiser's final report.  Absent such a showing, the Court cannot evaluate the

---

[10]  The Court addresses Movant's *Stern* objection below.

adequacy of the underlying consideration, the legitimacy of the debt owed under either the Promissory Note or the Whitaker Note, the propriety of listing such debt on Debtor's Chapter 11 schedule, or whether—disregarding such debt—this bankruptcy proceeding is actually a two-party dispute.  Relatedly, Movant has not offered sufficient evidence that Debtor—an entity with ongoing business and at least 15 employees unrelated to the Whitakers—is, in fact, an "alter ego" of Aerial.  The Court, accordingly, cannot evaluate the import of Movant's citation lien or the classification of its claim in the Plan.  In short, the Court cannot rule that Debtor does not belong in bankruptcy court.  *See In re Local Union 722 Int'l Bhd. of Teamsters*, 414 B.R. 443, 448 (Bankr. N.D. Ill. 2009) ("Bad faith is not found solely because the debtor has one or a small body of creditors since filing a chapter 11 case after falling on the wrong side of a judgment is not uncommon.  However, there must be a realistic intention of financial rehabilitation").  Considerations of judicial economy militate in favor of leaving this matter within the bankruptcy court's jurisdiction for further factual consideration.

Ultimately, given the "core" nature of the ongoing proceedings—and given the bankruptcy court's familiarity with such matters—the Court declines to withdraw the reference of Debtor's Chapter 11 case.  *See In re Emerald Casino*, 467 B.R. at 135 ("Withdrawal is traditionally the exception, rather than the rule, as bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets") (citation omitted); *see also Equipment Acquisition*, 2010 WL 3273060 at *1 ("Under the Bankruptcy Code, Congress intended for bankruptcy judges to determine complex Title 11 issues to the greatest extent possible") (citation omitted).

## 2.     Withdrawal of Reference over Movant's Adversary Claims

Construing its request narrowly, Movant asks the Court to withdraw the reference of its successor liability and alter ego claims against Debtor. Although it is not clear that Movant has actually *asserted* such claims in the underlying bankruptcy proceeding, the bankruptcy court acknowledged such claims, observing: "The successor liability [and] alter ego claims are, of course, state causes of action. They can [be] brought by adversary proceeding if the movant wants to pursue those and frankly under the facts may want to pursue them." (R.10, Transcript at 21). Movant now argues that, "[r]egardless of whether this case is a two-party dispute, the bankruptcy court lacks jurisdiction without Movant's consent to decide the State law successor liability and alter ego causes of action which determine whether Debtor is entitled to confirm its Chapter 11 plan." (R.13, Reply Br. at 5).

As the Supreme Court has observed with respect to statutory authorization under 28 U.S.C. § 157:

> If a matter is core, the statute empowers the bankruptcy judge to enter final judgment on the claim, subject to appellate review by the district court. If a matter is non-core, and the parties have not consented to final adjudication by the bankruptcy court, the bankruptcy judge must propose findings of fact and conclusions of law. Then, the district court must review the proceeding *de novo* and enter final judgment.

*Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172 (2014). Constitutional authority, however, is a different inquiry. In *Stern*, for example, the Supreme Court held that bankruptcy courts lack "the constitutional authority to enter a final judgment on a state law counterclaim that is not resolved in the process of ruling on a creditor's proof of claim[,]" thus removing such counterclaims "from core bankruptcy jurisdiction[.]" *See* 564 U.S. at 502-03; *see also Fifth Third Mortg. Co. v. Blouin*, No. 15-CV-00366, 2015 WL 3623630, at *2 (N.D. Ill. June 9, 2015) (discussing *Stern*). The Supreme Court later characterized so-called "*Stern* claims" as those "designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited

from proceeding in that way as a constitutional matter." *Executive Benefits*, 134 S. Ct. at 2170.

Under Seventh Circuit precedent, "a state-law claim between private parties that is wholly

independent of federal bankruptcy law and is not resolved in the claims-allowance process" is

one such claim. *See Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 775-76 (7th Cir. 2013),

*rev'd*, 135 S. Ct. 1932, 191 L. Ed. 2d 911 (2015).[11]

    As an initial matter, the Court is not convinced that Movant's proposed claims are, in

fact, "*Stern* claims." *See Stern*, 564 U.S. at 499 ("the question is whether the action at issue

stems from the bankruptcy itself or would necessarily be resolved in the claims allowance

process"). It is not clear, for example, that Movant's fraudulent transfer theory against Debtor

would not "necessarily be resolved in the claims allowance process." *See In re 1701 Commerce,

LLC*, 511 B.R. 812, 816 n.10 (Bankr. N.D. Tex. 2014) ("This matter involves the unusual

situation where the bankrupt received, rather than the made, the transfer. Thus, although

requiring the court to determine a fraudulent transfer, the [claim objection] is necessarily

resolved in the claims allowance process") (distinguishing *Stern*); *see also In re Boricich*, 464

B.R. 335, 337 (Bankr. N.D. Ill. 2011) ("*Stern* left intact the authority of a bankruptcy judge to

fully adjudge a creditor's claim"); *Fifth Third Mortgage*, 2015 WL 3623630 at *3-4 (noting the

same).[12] Given *Stern*'s caution that it applies to a "narrow" category of claims, *see* 564 U.S. at

502—and given Movant's failure to identify factually analogous case law—it is not clear that

*Stern* broadly precludes bankruptcy courts from ever entering final judgments on "state law

---

[11] The Supreme Court in *Wellness* did not address the contention that the Seventh Circuit had erred in concluding that the "alter ego" claim at issue was, in fact, a "*Stern* claim." *See Wellness*, 135 S. Ct. at 1942 n.7.

[12] On the other hand, to the extent Movant desires to file an "alter ego" claim against the Whitakers within the context of Debtor's bankruptcy proceeding, such a claim appears to implicate *Stern* concerns. *See Wellness*, 727 F.3d at 774-75.

issues concerning successor liability and alter ego claims involving [ ] fraudulently transferred assets."  (R.13, Reply Br. at 3-4).

Moreover, even construing Movant's successor liability and alter ego claims as "*Stern* claims"—or as "non-core" claims within the meaning of 28 U.S.C. § 157(c)(1)[13]—the bankruptcy court has jurisdiction to "hear the proceeding and submit proposed findings of fact and conclusions of law to the district court for *de novo* review and entry of judgment."  *See Executive Benefits*, 134 S. Ct. at 2173; *Wellness*, 135 S. Ct. at 1940 ("Absent consent, bankruptcy courts in non-core proceedings may only 'submit proposed findings of fact and conclusions of law,' which the district courts review *de novo*") (citing 28 U.S.C. § 157(c)(1)).[14] As other district courts have recognized, the bankruptcy court's inability to enter final judgment on non-core claims does not, standing alone, constitute "cause" for the early withdrawal of a reference.  To the contrary, the bankruptcy court's ability to handle pre-trial matters and to issue, as necessary, proposed findings of fact and conclusions of law promotes judicial economy and weighs against early withdrawal.  *See In re Emerald*, 467 B.R. at 134 ("Of those courts that have reached the question . . . the overwhelming majority have declined, post-*Stern*, to withdraw the reference, recognizing the value of the bankruptcy judge's familiarity with relevant law and the facts of the cases before them"); *Mason v. Klarchek*, No. 12-CV-9971, 2013 WL 1869098, at *3 (N.D. Ill. May 2, 2013) ("If . . . the bankruptcy judge determines a jury trial is necessary, or he

---

[13]  That provision reads:  "A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11.  In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  *See* 28 U.S.C. § 157(c)(1).  Movant's successor liability and alter ego claims likely fall within the category of "related to" jurisdiction.  *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 n.5 (1995) ("Proceedings 'related to' the bankruptcy include . . . suits between third parties which have an effect on the bankruptcy estate"); *Executive Benefits*, 134 S. Ct. at 2174 (noting the same).

[14]  Contrary to Movant's argument on appeal, thus, the bankruptcy court's purported "invitation" to commence an adversary proceeding was not an unauthorized "attempt to expand the judicial power of Article I bankruptcy courts to usurp a state court proceeding."  (R.12, Appellant Br. 3).

24

otherwise lacks the authority to fully adjudicate the Adversary Proceeding, the Movants may renew their motion when all pre-trial matters have been resolved"); *Gecker v. Marathon Fin. Ins. Co., RRG*, 391 B.R. 613, 616 (N.D. Ill. 2008) ("courts frequently deny motions to withdraw the reference without prejudice to take advantage of the judicial economy that comes with the bankruptcy judge's familiarity with the parties and the issues"); *First Midwest Bank*, 2016 WL 1259378 at *3 ("And even if, as the Committee contends, four of its claims . . . are non-core claims, and two are 'arguably' *Stern* claims, the Committee makes no argument as to what loss of judicial economy there is in permitting the bankruptcy court to submit a report of recommended findings of fact and conclusions of law to this Court"); *STC*, 2015 WL 1042431 at *4 ("A party's refusal to consent to final adjudication by a bankruptcy court and the assertion of a Seventh Amendment right to a jury trial . . . is insufficient for permissive withdrawal"); *Kemp v. Nelson*, No. 16-CV-1546-JPS, 2016 WL 7177508, at *2-3 (E.D. Wis. Dec. 9, 2016) ("The Court finds that the wiser exercise of discretion and use of its limited resources is to permit the bankruptcy court to hear all pretrial matters arising in the adversary proceeding. At this early stage in the litigation, the long-distant prospect of a jury trial is not enough to warrant withdrawal of the reference"). The Court agrees with the reasoning set forth in these cases and concludes that withdrawal is not appropriate at this juncture, especially considering that Debtor alone—not Movant—requested a jury trial with respect to the Successor Liability Litigation. (R.11-12, Jury Demand).

The Court, accordingly, denies the motion to withdraw the reference without prejudice to later renewal.

## CONCLUSION

For the foregoing reasons, the Court declines to exercise jurisdiction over Movant's interlocutory appeal (R.1) and denies without prejudice its motion to withdraw the reference (R.9).

**Dated:**   January 19, 2017

_____
AMY J. ST. EVE
United States District Court Judge